**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DELILAH A. GRAHAM-SMITH and RODNEY G. SMITH, her husband,** | : | **No. 3:14cv2159** |
| **Plaintiff** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **WILKES-BARRE POLICE DEPARTMENT, CITY OF WILKES-BARRE, ALAN GRIBBLE, in his official and individual capacities and GERARD E. DESSOYE, in his official and individual capacities,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Plaintiff Delilah Graham-Smith asserts several federal civil rights and state law tort claims against the defendants arising from her alleged failure to report an automobile accident, which occurred in downtown Wilkes-Barre.  Before the court for disposition is defendants' motion to dismiss all claims within plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons that follow, the court will grant in part and deny in part  defendants' motion to dismiss.

## Background[1]

Plaintiff Delilah A. Graham-Smith (hereinafter "plaintiff") brings

---

[1]  This background section is merely a brief overview of the case. The court will discuss the alleged facts more particularly below.

various claims relating to her alleged failure to report an automobile accident on November 13, 2012.  On that date, plaintiff drove in downtown Wilkes-Barre when another driver ran a red light and struck her car.  (Doc. 1, Compl. (hereinafter "Compl.") ¶ 13).  Shortly after the accident, plaintiff attempted to obtain assistance from a Wilkes-Barre police officer and a fire official.  (Id. ¶¶ 15-19).  Both the police officer and fire official, however, failed to render any assistance.  (Id.)  Accordingly, plaintiff walked to the Luzerne County Bank, approximately one-half block from the accident scene, to call her husband and the police.  (Id. ¶¶ 19-20).

While on the phone, plaintiff contends Defendant Officer Alan Gribble (hereinafter "Gribble" or "Officer Gribble") arrived at the bank and, without cause or provocation, verbally accosted, assaulted, battered, unlawfully seized, used excessive force against, and falsely imprisoned her.  (Id. ¶¶ 21-35).  Specifically, Gribble forcefully handcuffed plaintiff, escorted her out of the bank, shoved plaintiff into the back of his police car and drove plaintiff to the Wilkes-Barre General Hospital to have plaintiff involuntarily committed.  (Id. ¶¶ 21-39).

Based upon these factual allegations, plaintiff asserts various civil rights claims and state law tort claims including the following: Count I, 42

2

U.S.C. § 1983, Fifth and Fourteenth Amendment versus all defendants;

Count II, 42 U.S.C. § 1983, Fourth and Fourteenth Amendment versus all

defendants; Count III, 42 U.S.C. § 1983, Municipal Liability against the

City of Wilkes-Barre; Count IV, State Law–assault against Chief Dessoye

and Officer Gribble; Count V, State Law–battery versus Chief Dessoye

and Officer Gribble; Count VI, State Law–false imprisonment versus Chief

Dessoye and Officer Gribble; Count VII, State Law–intentional infliction of

emotional distress versus Chief Dessoye and Officer Gribble; Count VIII,

State Law–negligent infliction of emotional distress against Chief Dessoye

and Officer Gribble; Count IX, State Law–loss of consortium against Chief

Dessoye and Officer Gribble.

Defendants Wilkes-Barre Police Department, City of Wilkes-Barre,

Chief of Police Gerard R. Dessoye and Police Officer Alan Gribble

(collectively "defendants") have moved to dismiss the complaint pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The parties have

briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this civil rights action

brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331 ("The district

3

courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."); 28 U.S.C.

§§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions

brought to redress deprivations of constitutional or statutory rights by way

of damages or equitable relief).  We have supplemental jurisdiction over

plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).  ("[I]n any civil

action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III of the United

States Constitution.").

**Legal Standard**

Defendants filed their motion to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of

the complaint's allegations when considering a Rule 12(b)(6) motion.  All

well-pleaded allegations of the complaint must be viewed as true and in

the light most favorable to the non-movant to determine whether, "'under

any reasonable reading of the pleadings, the plaintiff may be entitled to

relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir.

4

1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendants Wilkes-Barre Police Department, City of Wilkes-Barre, Officer Alan Gribble and Chief Gerard Dessoye each seek dismissal of all

claims against them.  Thus, the court will address each count of plaintiff's complaint *in seriatim*.

Prior to addressing plaintiff's civil rights claims asserted in Counts I-III, the court will briefly discuss three issues regarding these claims.  First, defendants move to dismiss all civil rights claims against the Wilkes-Barre Police Department, contending these claims are duplicative of the claims against the City of Wilkes-Barre.  The Third Circuit Court of Appeals has held that a municipality and its police department are treated as the same entity under section 1983.  Briggs v. Moore, 251 F. App'x 77, 79 (3d Cir. 2007); see also Bonenberger v. Plymouth Twp., 132 F. 3d 20, 25 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability.").  Here, plaintiff asserts identical civil rights claims against both the Wilkes-Barre Police Department and the City of Wilkes-Barre.  Plaintiff's claims against the Wilkes-Barre Police Department are therefore duplicative of her claims against the City of Wilkes-Barre and will be dismissed.[2]

Second, Defendants Chief Dessoye and Officer Gribble seek the

---

[2]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

dismissal of all claims against them in their official capacities.  The United States Supreme Court has explained that a suit against an individual defendant in his official capacity is equivalent to a suit against the municipality.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ."); Kentucky v. Graham, 473 U.S. 159, 166, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under Monell . . . local government units can be sued directly for damages and injunctive or declaratory relief.").  Ergo, the court will dismiss all civil rights claims against Chief Dessoye and Officer Gribble in their official capacities as duplicative of the claims against the City of Wilkes-Barre.[3]

Finally, Chief Dessoye moves to dismiss all civil rights claims against him in his individual capacity, arguing that he had no personal involvement in the alleged unconstitutional conduct.  In section 1983 cases, it is well established that *respondeat superior* is not a viable theory.

---

[3]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

Monell, 436 U.S. at 691.  Rather the Supreme Court has held that supervisor liability can only be imposed in section 1983 claims if that supervisor played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a section 1983 suit–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer.")

Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").  To set forth an action for supervisory liability under section 1983, a "plaintiff must demonstrate that the supervising officials: (1) personally participated in violating a person's rights; (2) directed others to violate a person's rights; or (3) had knowledge of and acquiesced in a subordinate's violation of a person's rights."  Simonton v. Tennis, 437 F. App'x 60, 64 (3d Cir. 2011) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 76-78 (2006)).

As discussed in detail below, plaintiff has failed to allege that Chief Dessoye participated in violating or directed Officer Gribble to violate plaintiff's constitutional rights.  Additionally, the complaint fails to state that

Dessoye actually knew or acquiesced in Officer Gribble's alleged unconstitutional conduct.  Where a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Accordingly, the court will dismiss all federal claims against Chief Dessoye in his individual capacity.[4]

## I. Plaintiff's federal law claims: Counts I - III[5]

Plaintiff asserts her civil rights claims pursuant to 42 U.S.C. § 1983 (hereinafter "section 1983").  Section 1983 does not, by its own terms, create substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v.

---

[4]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

[5]  Plaintiff's first three counts assert several civil rights causes of action against Chief Dessoye, Officer Gribble and the City of Wilkes-Barre.  Count I contends these defendants infringed on plaintiff's constitutionally protected "liberty rights" without due process of law under the Fifth and Fourteenth Amendments.  Count II avers these defendants unlawfully seized, falsely imprisoned and used excessive force against plaintiff in contravention of the Fourth and Fourteenth Amendments. Count III states a municipal liability claim for failure to train and supervise against the City of Wilkes-Barre.

Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 states in

pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected,
> any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity or other proper proceeding for redress . . .

42 U.S.C. § 1983.  Thus, to establish a claim under section 1983, two

criteria must be met.  First, a person acting under color of state law must

have committed the underlying conduct.  Sameric Corp. of Del., Inc. v.

City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Second, the conduct

must deprive the plaintiff of rights secured under the Constitution or

federal law.  Id.  Here, the parties do not contest the defendants acted

under state law.  Rather, the parties disagree regarding whether the

defendants deprived plaintiff of her constitutional rights.

## A.  Count I, Fifth and Fourteenth Amendment claims against Gribble

Having dismissed all civil rights claims against Chief Dessoye, the

Wilkes-Barre Police Department, and Officer Gribble in his official

capacity, the court next turns to plaintiff's Fifth and Fourteenth

Amendment claims asserted in Count I.  Count I alleges causes of action

against Officer Gribble in his individual capacity for deprivation of

plaintiff's right to liberty without due process of law pursuant to the Fifth

and Fourteenth Amendments.

Initially, the court notes Officer Gribble is a municipal police officer

and not a federal official, which precludes liability pursuant to the Fifth

Amendment.  Specifically, the Fifth Amendment to the United States

Constitution provides, in part, that "[n]o person shall . . . be deprived of

life, liberty, or property, without due process of law."  It is well-established,

however, that the Fifth Amendment restricts the actions of federal

officials, not state actors.  Nguyen v. U.S. Catholic Conference, 719 F.2d

52, 54 (3d Cir. 1983).  As such, the court will dismiss plaintiff's section

1983 claim for a violation of the Fifth Amendment against Officer Gribble.[6]

Moreover, plaintiff concedes that her due process unlawful seizure

claim in Count I under the Fourteenth Amendment is more appropriately

analyzed under her Fourth Amendment unlawful seizure claim alleged in

Count II.  (Doc. 13, Pl.'s Br. in Opp'n Mot to Dismiss at 10) (stating that

"[t]he complaint adequately states a claim against Officer Gribble for

---

[6]  The court will dismiss this claim with prejudice as an amendment
would be futile.  See Alston, 363 F.3d at 235 (holding that district courts
must permit a curative amendment within a set period of time unless such
an amendment would be inequitable or futile).

violation of [plaintiff's] Fourth Amendment right to be free from unlawful seizure of the person.").  Thus, the court will dismiss plaintiff's Fourteenth Amendment due process unlawful seizure claim against Officer Gribble.[7]

## B.  Count II, Fourth and Fourteenth Amendments claims

The court next addresses Count II.  Count II asserts three causes of action against Officer Gribble in his individual capacity: 1) unlawful seizure under the Fourth Amendment; 2) false imprisonment pursuant to the Fourteenth Amendment and 3) excessive force under the Fourth Amendment.  The court addresses each claim *in seriatim*.

### 1.  Unlawful seizure

Plaintiff avers Officer Gribble unlawfully seized her on the date of the automobile accident in contravention of the Fourth Amendment.  The Fourth Amendment protects individuals from "unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  Under the Fourth Amendment, an individual is "seized" when an officer restrains a person by either means of physical force or a show of authority, thereby restraining their liberty. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  "[A] person has been 'seized'

---

[7]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235  (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  California v. Hodari D., 499 U.S. 621, 627-28 (1991).

"When a police officer has a 'reasonable, articulable suspicion that criminal activity is afoot,' he or she may conduct a 'brief, investigatory stop.'"  United States v. Whitfield, 634 F.3d 741, 744 (3d Cir. 2010) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).  "Reasonable suspicion" requires less than probable cause, but must rise to a minimal level of objective justification for the stop, considered under the totality of the circumstances.  Id.

In the instant matter, plaintiff's complaint sufficiently alleges an unlawful seizure.  On the morning of November 12, 2012, plaintiff drove in downtown Wilkes-Barre when another vehicle struck her car.  (Compl. ¶ 13).  Plaintiff exited her vehicle and asked several pedestrians to call for help.  (Id. ¶ 14).  Soon thereafter, a Wilkes-Barre police officer arrived and interviewed plaintiff.  (Id. ¶ 15).  Plaintiff advised the police officer that she was not injured and requested the officer speak with the other driver regarding the cause of the accident.  (Id.)  Plaintiff avers the officer

became agitated and advised plaintiff she should not tell him how to do his job.  (Id. ¶ 16).  The officer then left the scene of the accident without interviewing the other driver.  (Id.)

Subsequent to the police officer departing the scene of the accident, a fire engine arrived.  (Id. ¶ 17).  A fire official exited the fire truck and spoke with plaintiff.  (Id.)  Plaintiff requested the fire official call her husband.  (Id.)  The fire official attempted to contact plaintiff's husband, but his attempts were unsuccessful.  (Id. 18).   According to the plaintiff, the fire official climbed back onto the fire engine and left.  (Id.)

Thereafter, plaintiff left the scene of the accident and walked less than one block to seek help from the employees of Luzerne Bank.  (Id. ¶ 19).  Plaintiff entered the bank and advised a teller that she had just been in an accident and requested to use the bank's telephone to call her husband.  (Id. ¶ 20).  The teller allowed plaintiff to use the bank's telephone, and plaintiff called her husband.  (Id. ¶¶ 20-21).

Moments later, plaintiff contends Officer Gribble arrived at the bank, walked briskly toward her and shouted, "Get off the phone!  Leave the bank!  Leave the bank!"  (Id. ¶ 21).  Plaintiff avers she immediately began feeling faint and experienced severe pain in her head, torso and

extremities, causing her to sit down in a nearby chair.  (Id. ¶ 22).  Officer

Gribble walked forcefully up to plaintiff's face and screamed, "You idiot!  I

am arresting you for leaving the scene of an accident."  (Id. ¶ 23).  When

plaintiff did not immediately stand up, Officer Gribble grabbed plaintiff's

arms and violently shoved them behind plaintiff's bank.  (Id. ¶ 24).

Gribble then confiscated plaintiff's belongings and handcuffed plaintiff.

(Id.)

Officer Gribble next grabbed plaintiff's wrists and "jerked plaintiff up

to her feet," injuring plaintiff's arms and shoulders.  (Id. ¶ 26).  Plaintiff

repeatedly requested Officer Gribble loosen the handcuffs because they

were excessively tight, causing excruciating pain.  (Id.)  Officer Gribble,

however, failed to loosen the handcuffs.  (Id.)  Instead, Officer Gribble

continued berating plaintiff regarding how she left the scene of an

accident.  (Id. ¶ 25).

Next, Officer Gribble pushed plaintiff below her neck and escorted

her out of the bank while screaming that plaintiff was "off her

medications," and "I'll take care of you once and for all, Delilah!"  (Id. ¶

28).  Plaintiff's husband arrived and approached his wife, but Officer

Gribble shouted and gestured for Mr. Smith to "Stay away!  Stay away!"

Gribble continued taunting and humiliating plaintiff as he paraded plaintiff back to the scene of the accident.  (Id. ¶ 29).  When they arrived at Gribble's police car, Gribble forcefully pulled on plaintiff's arms and pushed plaintiff into the back of his police car while shouting that he would "take care of you once and for all Delilah Smith."  (Id.)  Gribble then drove plaintiff back to the scene of the accident.  (Id. ¶ 34).

At the accident scene, Gribble exited his car and interviewed the other driver, while plaintiff remained handcuffed in the backseat of Gribble's car.  (Id. ¶ 35).  Fifteen (15) minutes later, Gribble returned and drove plaintiff to the Wilkes-Barre General Hospital.  (Id. ¶ 36).

When they arrived at the hospital, Gribble escorted plaintiff, still in handcuffs, into the Emergency Department.  (Id.)  Plaintiff continued pleading with Gribble asking for the reasons for her seizure.  (Id.)  Gribble, however, continued pushing plaintiff and yelled at her to "shut up."  (Id.)

Once inside the Emergency Department, Gribble sought to have plaintiff committed for psychiatric treatment.  (Id. ¶ 38).  Over the next seven (7) hours, Emergency Department staff examined plaintiff and required plaintiff to submit to blood and urine tests.  (Id. ¶ 39).

Eventually, the Emergency Department staff released plaintiff.  (Id.)

Viewing plaintiff's allegations as true, the court finds plaintiff has properly plead a Fourth Amendment unlawful seizure claim pertaining to her interactions with Officer Gribble.  At least at this point in the proceedings, the totality of the circumstances reveal that Gribble may not have had reasonable articulable suspicion for the plaintiff's seizure.  Therefore, Gribble's motion to dismiss plaintiff's unlawful seizure claim will be denied.

### 2. False imprisonment

Plaintiff also asserts a false imprisonment claim against Officer Gribble.  "A false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law."  Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)).  Viewing plaintiff's allegations previously discussed as true, Officer Gribble's actions in handcuffing plaintiff, placing plaintiff in the back of his police car and seeking to have plaintiff involuntarily committed for over seven (7) hours may give rise to a claim for false imprisonment under the Fourteenth Amendment.  Ergo, the court will deny Officer Gribble's

motion to dismiss this claim.

### 3. Excessive force

Plaintiff's final claim within Count III contends Officer Gribble used excessive force while unlawfully seizing plaintiff.  An "excessive force" claim addresses either the Fourth Amendment's prohibition against unreasonable seizures of the person or the Eighth Amendment's ban on cruel and unusual punishment.  Graham v. Connor, 490 U.S. 386, 394 (1989).  In the instant case, plaintiff asserts an excessive force claim based upon an unreasonable seizure.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion of the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  Terry, 392 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).  To evaluate whether force was excessive, the "court must determine the objective 'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"

Couden v. Duffy, 446 F.3d 483, 497 (3d Cir .2006) (quoting Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)).

Among other factors a court considers are "'the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.'" Id. (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)). Because police officers must often make split-second decisions in tense situations, courts consider events from "'the perspective of a reasonable officer on the scene.'" Id. (quoting Graham, 490 U.S. at 397).

Officer Gribble argues that his actions were objectively reasonable and plaintiff's asserted injury is temporary, minor and/or *de minimis*. The court disagrees for two reasons. First, Gribble's actions may constitute an unreasonable use of force while seizing plaintiff. Specifically, the severity of the crime–leaving the scene of an automobile accident to call for help when a prior police officer and fire official failed to render assistance–is minimal. Plaintiff also asserts she never resisted Officer Gribble. Finally, Officer Gribble only contended with one person, the plaintiff, throughout the entirety of this event. Officer Gribble did not

19

forcefully remove a patron from a graduation ceremony, bar or other public venue, requiring Gribble to contend with multiple individuals at the same time.

Second, plaintiff's allegations regarding Officer Gribble's use of force may rise to excessive force.  Plaintiff asserts Officer Gribble shoved plaintiff's hands behind her back, fastened the handcuffs too tight, violently jerked plaintiff up to her feet, injuring plaintiff's shoulder, and continued pushing plaintiff from the bank lobby to his police car even though plaintiff offered no resistence.  (Compl. ¶¶ 24-28).  Additionally, Gribble continued shouting epithets and verbally assaulting plaintiff while he paraded her one-half block away to his police car.  (Id. ¶¶ 28-29). Gribble also forcefully pushed plaintiff into the back of the police car and insulted plaintiff about being "off her medications" and threatening that he "would take care of her once and for all."  (Id. ¶ 30).

It is premature at the motion to dismiss stage for Officer Gribble to argue the facts and try to convince the court that he did not use excessive force when seizing plaintiff.  Factual issues exist, and we must accept the facts as alleged in the complaint as true in ruling on a 12(b) motion to dismiss.  Accordingly, we will deny the motion to dismiss

plaintiff's excessive force claim.

In short, viewing plaintiff's allegations as true, the court will deny Officer Gribble's motion to dismiss all three civil rights causes of action asserted against him in Count II: 1) unlawful seizure under the Fourth Amendment; 2) false imprisonment pursuant to the Fourteenth Amendment; and 3) excessive force in contravention of the Fourth Amendment.  These claims will proceed through discovery.

## C.  Qualified Immunity

Officer Gribble next argues that qualified immunity shields him from liability regarding plaintiff's federal claims in Count II.  After careful review, the court finds that it is inappropriate to apply qualified immunity at this time.

Qualified immunity can serve as a defense for an individual defendant accused of a civil rights violation.  Hunter v. Bryant, 502 U.S. 224, 227 (1991).  "A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  Carroll v. Carman, 135 S.Ct. 348, 350 (2014) (per curiam).  For a qualified immunity analysis, therefore, the court must examine: 1)

whether the officials violated a constitutional right and 2) whether that right was clearly established at the time.  Wright v. City of Phila., 409 F.3d 595, 699-700 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A legal right is "clearly established" where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate.  This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Carroll, 135 S.Ct. at 350.

In the instant case, we have determined that Officer Gribble may have violated plaintiff's constitutional rights.  If it is found that Gribble violated plaintiff's constitutional rights to be free from unlawful seizure, false imprisonment and excessive force, we conclude that these rights were in fact clearly established at the time of the complained of events.  As such, the application of qualified immunity to Officer Gribble is

inappropriate at this time.[8]

## D.  Punitive Damages

Gribble next seeks to dismiss plaintiff's claims for punitive damages arising from his alleged violations of plaintiff's constitutional rights. Plaintiff's complaint demands judgment including, *inter alia*, punitive damages against Officer Gribble.  In a section 1983 action, a plaintiff can claim punitive damages if a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Punitive damages are not available against state actors in their official capacities, but punitive damages are available against an official sued in his personal (or individual) capacity.  Graham, 473 U.S. at 167 n.13.

In the instant matter, plaintiff has sufficiently alleged a claim for punitive damages.  Plaintiff alleges, in part, that the Officer Gribble abused his power as an officer of the law and unlawfully seized, used excessive force against, and falsely imprisoned plaintiff.  (Compl. ¶¶ 21-39).  If these allegations are proven true, they may amount, at a

---

[8]  Officer Gribble may raise this issue again at the summary judgment stage once discovery has been completed.

minimum, to a callous indifference to plaintiff's federally protected rights.

Accordingly, the court will deny Gribble's motion to dismiss plaintiff's

claim for punitive damages.

**E.  Count III, Fourteenth Amendment claims against the City of Wilkes-Barre**

In Count III, plaintiff states a municipal liability claim against the City

of Wilkes-Barre (hereinafter the "City").  Plaintiff seeks to hold the City

responsible for the civil rights violation committed by its employee.

Municipal employers cannot be held vicariously liable for the constitutional

violations committed by their employees.  Monell v. NYC Dep't of Soc.

Servs., 436 U.S. 658, 694 (1978).  Municipal liability only attaches when a

plaintiff demonstrates that an official policy or custom caused the asserted

constitutional deprivation.  Watson v. Abington Twp., 478 F.3d 144, 155

(3d Cir. 2007).  A policy may be established several different ways,

including a municipality's failure to train its employees.  See Stoneking v.

Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989) (explaining that

a failure to train may represent a policy that will support municipal liability).

In the instant matter, plaintiff's complaint indicates that she seeks to

establish a municipal policy based upon the City's failure to adequately

train Officer Gribble.  Specifically, plaintiff alleges that the City and its

24

officials failed to provide adequate training and supervision to City police officers regarding the constitutional limits on use of force, detention, and provision of medical care.  (Compl. ¶ 12).  The complaint further asserts that the City knew of the Chief of Police's propensity for selecting, retaining and assigning officers with tendencies for excessive force, violence, dishonesty and other misconduct.

Once a plaintiff identifies the "policy" at issue, she must demonstrate causation, that is, that the municipality through its policy was the "'moving force' behind the injury."  Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).  Where the policy does not facially violate the Constitution, causation is established by demonstrating deliberate indifference to the policy's known or obvious consequences.  Id.  "Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)).

If no pattern of violations exists, the plaintiff bears a high burden to establish deliberate indifference.  She must demonstrate that the violation

of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations.  Id.  The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference.  Id.

At this early stage in the litigation, the court finds that plaintiff has made sufficient allegations supporting causation based upon the City's failure to train Officer Gribble and other Wilkes-Barre Police Department officers regarding the constitutional limits on use of force, detention, and provision of medical care.  Read in conjunction with plaintiff's factual averments, these allegations may impose municipal liability against the City.  Thus, the City's motion to dismiss plaintiff's municipal liability claims will be denied.[9]

## II. Plaintiff's state law claims: Counts IV-IX

Plaintiff asserts several state law claims against Chief Dessoye and Officer Gribble.[10]  Chief Dessoye and Officer Gribble argue that

---

[9]  It may be appropriate to address this issue again at the summary judgment stage once discovery has been completed.

[10]  Plaintiff's six (6) state law claims against Chief Dessoye and Officer Gribble are: Count IV–assault; Count V–battery; Count VI–false imprisonment; Count VII–intentional infliction of emotional distress; Count

Pennsylvania's Political Subdivision Tort Claims Act (hereinafter "PSTCA"), 42 PA. CONS. STAT. ANN. § 8541 *et. seq.*, provides them with immunity from plaintiff's state law claims.  Pursuant to the PSTCA, a local agency cannot be held "liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 PA. CONS. STAT. ANN. § 8541.[11]  Additionally, the Third Circuit Court of Appeals has stated that "[m]unicipal employees . . . are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment.  However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to 'actual malice' or 'willful misconduct.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).

_____

VIII–negligent infliction of emotional distress; and Count IX–loss of consortium.  Plaintiff, however, fails to contest defendant's motion to dismiss her negligent infliction of emotional distress claim and her husband's loss of consortium claim regarding the alleged deprivation of her constitutional rights.  Ergo, the court will grant defendants' motion to dismiss these claims as unopposed.

[11]  The Act provides for eight exceptions to this rule, but none apply here: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility services facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals.  42 PA. CONS. STAT. ANN. § 8542(b).

The Pennsylvania Supreme Court has recognized willful misconduct as requiring a demanding level of fault. Id.  "Willful misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'"  Id. (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994)).  In short, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" Id. (quoting Id.).

For the same reasons stated earlier regarding the absence of liability against Chief Dessoye because he had no personal involvement in the alleged deprivation of plaintiff's constitutional rights, plaintiff has failed to allege that Chief Dessoye engaged in any "willful misconduct."  Therefore, Chief Dessoye is entitled to immunity under Pennsylvania law pertaining to plaintiff's state law claims.

On the other hand, plaintiff alleges Officer Gribble committed intentional torts when Gribble unlawfully seized, used excessive force against, and falsely imprisoned plaintiff.  Plaintiff asserts Gribble assaulted, battered, falsely imprisoned and intentionally inflicted emotional distress upon plaintiff.  If plaintiff proves her allegations, immunity may not

28

apply.  As such, at the present time, the court will deny Gribble's motion on this ground.

**Conclusion**

For the above-stated reasons, the court will grant in part and deny in part defendants' motion to dismiss.  The court will dismiss all claims against the Wilkes-Barre Police Department and Chief Dessoye.  The court will further dismiss all claims against Officer Gribble in his official capacity.  Additionally, the court will dismiss the following matters with prejudice: Count I, Fifth and Fourteenth Amendment claims against Officer Gribble in his individual capacity; Count VIII, negligent infliction of emotional distress; and Count IX, loss of consortium.  Finally, the court will deny without prejudice Officer Gribble's arguments regarding qualified immunity and punitive damages.  Defendants' motion to dismiss will be denied in all other aspects.

Accordingly, plaintiff's remaining claims will be: Count II, 42 U.S.C. § 1983, unlawful seizure, false imprisonment and excessive force in contravention of the Fourth and Fourteenth Amendments versus Officer Gribble in his individual capacity; Count III, 42 U.S.C. § 1983, Municipal Liability against the City of Wilkes-Barre; Count IV, State Law–assault

against Officer Gribble; Count V, State Law–battery versus Officer

Gribble; Count VI, State Law–false imprisonment versus Officer Gribble

and Count VII, State Law–intentional infliction of emotional distress versus

Officer Gribble.  An appropriate order follows.

**Date:   05/19/2015**                    **s/ James M. Munley**
                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**