# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELILAH GRAHAM-SMITH and RODNEY G. SMITH, her husband, | : : | No. 3:14cv2159 |
| Plaintiffs | : : | (Judge Munley) |
| v. | : : | |
| CITY OF WILKES-BARRE and ALAN GRIBBLE, in his individual capacity, | : : : | |
| Defendants | : | |

## **MEMORANDUM**

Before the court for disposition is Defendants City of Wilkes-Barre and police officer Alan Gribble's (collectively "the city defendants") motion for summary judgment. (Doc. 34). For the following reasons, the court will grant the motion.

## Background

On November 12, 2012, a motorist ran a red light in downtown Wilkes-Barre and struck Plaintiff Delilah Graham-Smith's (hereinafter "plaintiff") automobile. (Doc. 35, Defs.' Statement of Material Facts (hereinafter "SOF") ¶¶ 17, 19).[1] Shortly after the accident, the Wilkes-Barre Fire Department and Defendant Alan Gribble, a City of Wilkes-Barre police

---

[1] We cite to the city defendants' SOF (Doc. 35) for statements which plaintiff generally agrees with in her response (Doc. 41, Pl.'s Resp. (hereinafter "Pl.'s Resp.").

officer (hereinafter "Officer Gribble"), arrived at the scene. (SOF ¶¶ 23-24). At some point, plaintiff walked across the street to Luzerne Bank. (SOF ¶ 27). Officer Gribble learned that plaintiff left the accident scene, and soon arrived at Luzerne Bank as well. (SOF ¶¶ 29, 35).

At Luzerne Bank, Officer Gribble ordered plaintiff to return to the accident scene. (SOF ¶ 37). Plaintiff, however, wrapped her legs around a chair and refused to leave. (SOF ¶¶ 49-50). To remove plaintiff from the chair, Officer Gribble grabbed plaintiff's thumb and pulled it back in accordance with the Wilkes-Barre Police Department's Use of Force Policy. (SOF ¶ 51). At that point, plaintiff removed her fingers and her hand from the arm of the chair. (SOF ¶ 53). Plaintiff, however, remained non-compliant and refused to stand up. (SOF ¶ 54). Officer Gribble, therefore, lifted plaintiff from the chair. (SOF ¶ 54). He then placed plaintiff's hands behind her back and handcuffed her. (SOF ¶¶ 55-56).

After handcuffing plaintiff, Officer Gribble led plaintiff from the bank to the accident scene.[2] (SOF ¶ 64). He placed plaintiff in the backseat of a police cruiser and, shortly thereafter, drove her to the Wilkes-Barre General

---

[2] The parties dispute how Officer Gribble escorted plaintiff from the bank to the accident scene. The city defendants contend that Officer Gribble "walked" plaintiff out of the bank. (SOF ¶ 64). Plaintiff, however, avers that Officer Gribble "ran her out of the bank by pushing and pulling on the handcuffs." (Pl.'s Resp. ¶ 64).

2

Hospital for a mental health evaluation. (SOF ¶¶ 65, 69). At the hospital, Officer Gribble involuntarily committed plaintiff to hospital personnel pursuant to section 302 of Pennsylvania's Mental Health Procedures Act, 50 PA. STAT. ANN. § 7302 ("section 302"). (SOF ¶ 71).

Based upon the November 2012 incident, plaintiff filed a nine-count complaint on November 10, 2014, against the city defendants, the Wilkes-Barre Police Department, and Wilkes-Barre police chief Gerard E. Dessoye. (Doc. 1, Compl.). On May 19, 2015, the court dismissed Defendants Wilkes-Barre Police Department and Dessoye, as well as Officer Gribble in his official capacity. (Doc. 16). Additionally, plaintiff has conceded to withdraw her state law claims. (Doc. 42, Pl.'s Br. in Opp. at 11-12). Thus, remaining in this case are the following 42 U.S.C. § 1983 (hereinafter "section 1983") claims: Count II, unlawful seizure, false imprisonment, and excessive force claims against Officer Gribble in his individual capacity; and Count III, a municipal liability claim against the City of Wilkes-Barre.

On November 15, 2016, the city defendants moved for summary judgment on all claims. (Doc. 34). The parties briefed their respective positions and the matter is ripe for disposition.

3

**Jurisdiction**

As this case is brought pursuant to section 1983 for a violation of plaintiff's constitutional rights, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the

4

motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial.  Id. at 324.

**Discussion**

The city defendants move for summary judgment on plaintiff's remaining section 1983 claims.  Section 1983 does not, by its own terms, create substantive rights; rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v.

Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Section 1983 states, in pertinent part,

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Kaucher v. Cty. of Bucks, 455 F.3d 418 (3d Cir. 2006) (citing Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id. (citing Am. Mfrs., 526 U.S. at 49-50). The city defendants challenge only the second criterion, first with respect to Officer Gribble, and second with respect to the City of Wilkes-Barre. We address the city defendants' arguments in turn.

### I. Count II, Fourth Amendment Claims Against Officer Gribble

The city defendants first seek summary judgment on Count II, plaintiff's section 1983 unlawful seizure, false imprisonment, and excessive force claims against Officer Gribble in his individual capacity, arguing that

6

Gribble's conduct failed to deprive plaintiff of her constitutional rights.  We address each claim individually.

### A. Unlawful Seizure

The city defendants first move for summary judgment on plaintiff's section 1983 unlawful seizure claim against Officer Gribble.  The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures," except "upon probable cause[.]"  U.S. CONST. AMEND. IV.  A Fourth Amendment seizure occurs "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).  "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  California v. Hodari D., 499 U.S. 621, 627-28 (1991).  This "reasonable person" standard "allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment."  Michigan v. Chesternut, 486 U.S. 567, 574 (1988).  Furthermore, it "ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached."  Id.

Probable cause to seize or arrest "exists if there is a fair probability that the person committed the crime at issue." Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016) (citations, internal quotation marks, and internal brackets omitted). Stated differently, "'probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" Id. (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). This standard "'does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate.'" Id. (quoting Wright v. City of Phila., 409 F.3d 595, 603 (3d Cir. 2005)).

Here, the undisputed evidence establishes that Officer Gribble had probable cause to seize plaintiff. Specifically, after plaintiff's automobile accident, plaintiff walked across the street to Luzerne Bank. (SOF ¶ 27). Officer Gribble learned that plaintiff left the accident scene, and soon arrived at Luzerne Bank as well. (SOF ¶¶ 29, 35). At Luzerne Bank, Officer Gribble ordered plaintiff to return to the accident scene. (SOF ¶ 37). Plaintiff, however, wrapped her legs around a chair and refused to leave. (SOF ¶¶ 49-50). Plaintiff remained noncompliant throughout the exchange

8

and refused to stand up. (SOF ¶ 54). Officer Gribble, therefore, lifted plaintiff from the chair. (SOF ¶ 54). He then placed plaintiff's hands behind her back and handcuffed her. (SOF ¶¶ 55-56). After handcuffing plaintiff, Officer Gribble led plaintiff from the bank to the accident scene.[3] (SOF ¶ 64). He placed plaintiff in the backseat of a police cruiser and, shortly thereafter, drove her to the Wilkes-Barre General Hospital for a mental health evaluation. (SOF ¶¶ 65, 69).

Confronted with these undisputed facts, plaintiff argues that, in her mind, Officer Gribble did not seize her for leaving the accident scene. Rather, she contends that Officer Gribble seized her for one reason—to drive her to the hospital for a mental health evaluation. Thus, according to plaintiff, a disputed issue of material fact exists as to whether Office Gribble seized plaintiff for leaving the accident scene or to drive her to the hospital.

Plaintiff cites no authority for this proposition, and the court's research has uncovered none. Indeed, Supreme Court precedent regarding unlawful seizures compels the opposite conclusion. As previously stated, the Fourth Amendment's "reasonable person" standard "ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." <u>Chesternut</u>, 486 U.S. at

---

[3] As previously stated, the parties dispute how Officer Gribble escorted plaintiff from the bank to the accident scene. <u>See</u> <u>supra</u> note 2.

9

574. Thus, plaintiff's state of mind regarding the reason why Officer Gribble seized her is irrelevant.

Based upon these undisputed facts, Officer Gribble had probable cause to seize plaintiff for leaving the accident scene and repeated noncompliance. Even viewing the record in the light most favorable to plaintiff, no sufficient evidentiary basis exists upon which a reasonable jury could find in her favor. Therefore, the court will grant the city defendants' motion for summary judgment on plaintiff's section 1983 unlawful seizure claim against Officer Gribble.

**B. False Imprisonment**

The city defendants next move for summary judgment on plaintiff's section 1983 false imprisonment claim against Officer Gribble. "To state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful." James v. City of Wilkes-Barre, 700 F.3d 675, 682-83 (3d Cir. 2012) (citing Wallace v. Kato, 549 U.S. 384, 389 (2007)). A section 1983 false imprisonment claim based on an arrest made without probable cause "is grounded in the Fourth Amendment's guarantee against unreasonable seizures." Id. at 683 (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir.1995)). An arrest based on probable cause, however, cannot "become the source of a claim

10

for false imprisonment." Id. (citing Baker v. McCollan, 443 U.S. 137, 143-44 (1979)).

Here, having previously concluded that the undisputed evidence establishes that Officer Gribble had probable cause to seize plaintiff, we must also conclude that he had probable cause to arrest plaintiff. Specifically, Officer Gribble had probable cause to arrest plaintiff for leaving the accident scene and repeated noncompliance. Even viewing the record in the light most favorable to plaintiff, no sufficient evidentiary basis exists upon which a reasonable jury could find in her favor. Therefore, the court will grant the city defendants' motion for summary judgment on plaintiff's section 1983 false imprisonment claim against Officer Gribble.

**C. Excessive Force**

The city defendants next move for summary judgment on plaintiff's section 1983 excessive force claim against Officer Gribble. To prevail on a Fourth Amendment excessive force claim, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable under the circumstances." Lamont v. New Jersey, 637 F.3d 177, 182-83 (3d Cir. 2011) (citing Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989)). Here, the city defendants challenge only the second criterion.

The reasonableness test is whether, "under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). As the Supreme Court has explained,

> [t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97. "'[R]easonableness under the Fourth Amendment should frequently remain a question for the jury[.]'" Kopec, 361 F.3d at 777 (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)). In handcuff cases, however, "summary judgment for an officer . . . is appropriate where, 'after resolving all factual disputes in favor of the plaintiff, . . . the officer's use of force was objectively reasonable under the circumstances.'" Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005) (quoting Kopec, 361 F.3d at 777).

In the instant matter, plaintiff argues that Officer Gribble handcuffed her wrists unreasonably tight, and that such unreasonableness constitutes

12

excessive force.  We disagree for two reasons.  First, plaintiff has failed to adduce evidence sufficient to demonstrate that Officer Gribble used excessive force.  Second, the undisputed evidence actually demonstrates the opposite, namely that Officer Gribble's use of force was objectively reasonable under the circumstances.

First, plaintiff has failed to adduce evidence sufficient to demonstrate that Officer Gribble used excessive force.  Specifically, the undisputed evidence establishes that plaintiff repeatedly complained to Officer Gribble to loosen the handcuffs.  (SOF, Ex. 1, Dep. of Pl. (hereinafter "Pl.'s Dep.") at 63; SOF, Ex. 2, Dep. of Alan Gribble (hereinafter "Gribble Dep.") at 102).  Plaintiff testified that the handcuffs "were cutting her wrists" and that she "was becoming more breathless[.]"  (Pl.'s Dep. at 63).  She has not, however, adduced any testimony, other than her own, or discernible physical evidence indicating such obvious signs of pain.[4]

---

[4] Plaintiff relies on three photographs of her wrists, purportedly taken on November 13, 2012, as physical evidence of injury.  (Pl.'s Resp., Ex. 2, Photographs of Pl.'s Wrists at 1-3).  The photographs, however, are dark, ambiguous, and ultimately incomprehensible.  Furthermore, plaintiff provides no support, medical or otherwise, for the proposition that any wrist markings potentially indicated in the photographs are evidence of force beyond that which a reasonable arresting officer would use.  Thus, we do not consider the photographs discernible physical evidence indicating an obvious sign of pain.

13

Likewise, plaintiff cites no medical evidence establishing a hand or wrist injury that may have been caused by unreasonably tight handcuffs. Plaintiff does cite the report of Dr. Francis J. Collini, who noted that plaintiff "was handcuffed by police" and "since then has pain and numbness in both hands and wrists[.]" (Pl.'s Resp., Ex. 6, Med. Report of Dr. Francis J. Collini at 1). Plaintiff's complaints within the report, however, are subjective. In the report, Dr. Collini "ordered an EMG for the presence of CTS or ulnar compression neuropathy." (Id.) While he assessed plaintiff as having Carpal Tunnel Syndrome, he made no finding regarding the cause of her subjective complaints. (Id.) Moreover, plaintiff has produced neither the actual EMG ordered by Dr. Collini nor an assessment of such.

In Kopec, the Third Circuit Court of Appeals determined that the alleged tightness of the plaintiff's handcuffs, if credited by a jury, could establish excessive force. 361 F.3d at 777. There, the plaintiff repeatedly complained of extreme pain to the arresting officer, fell to the ground, and began to faint. Id. at 777. Furthermore, the plaintiff alleged permanent nerve damage in one wrist, for which a surgeon treated him for over one year. Id. at 774. Thus, the plaintiff asserted facts that, if proven, would establish a violation of his constitutional rights. Id. at 777.

Conversely, in Gilles, the Third Circuit determined that the alleged tightness of the plaintiff's handcuffs did not constitute excessive force, as he expressed no obvious, visible indicators of pain, nor did he seek or receive medical treatment thereafter. 427 F.3d at 207-08. There, the plaintiff's alleged complaint that the handcuffs were too tight, absent any other sign of physical pain, failed to establish a violation of his constitutional rights. Id. at 208.

Here, we find the instant matter analogous to Gilles, 427 F.3d 197. Other than her own complaints that the handcuffs were too tight, plaintiff expressed no obvious, visible indicators of pain, such as falling to the ground or fainting. Moreover, she has produced no evidence of permanent injury to, or consistent medical treatment of, her hands or wrists. While not all section 1983 excessive force claims involving handcuffs will demand facts identical to those in Kopec, 361 F.3d 772, plaintiff's claim here demands more than her own complaints. Kopec did "not intend to open the floodgates to a torrent of handcuff claims." 361 F.3d at 777. Thus, we find that plaintiff has failed to adduce evidence sufficient to demonstrate that Officer Gribble used excessive force.

Second, the undisputed evidence establishes that Officer Gribble's use of force was objectively reasonable under the circumstances.

15

Specifically, plaintiff committed a potential crime when she left the accident scene and walked across the street to Luzerne Bank. At Luzerne Bank, she repeatedly refused Officer Gribble's orders, and actively resisted his attempts to escort her to the accident scene. Although plaintiff complained about the tightness of the handcuffs, her complaints are unsubstantiated. Furthermore, Officer Gribble testified that, in response to plaintiff's complaints, he applied the "pinky test," an exercise where he placed his pinky finger in between the handcuffs and plaintiff's wrists to ensure enough room. (Gribble Dep. at 102). He also testified that he performed the pinky test on plaintiff "a couple of times." (Id. at 102-03).

Additionally, the parties agree that a police officer should file a 302 petition if the officer has grounds to believe that a person is danger to herself or another. (SOF ¶ 46). Officer Gribble did just that when he involuntarily committed plaintiff to the Wilkes-Barre General Hospital personnel pursuant to section 302.

As previously stated, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. As a result of plaintiff leaving the accident scene and her repeated noncompliance, this particular

situation clearly required <u>some</u> use of force.  The parties do not dispute the method of such force, handcuffs.  Rather, they dispute Officer Gribble's reasonableness in applying such force.

Here, the undisputed evidence demonstrates that plaintiff committed a potential crime when she left the accident scene, that she repeatedly refused Officer Gribble's orders, and that she actively resisted his attempts to escort her to the accident scene.  The evidence further establishes that Officer Gribble involuntarily committed plaintiff to the Wilkes-Barre General Hospital personnel pursuant to section 302.  <u>See</u> <u>Graham</u>, 490 U.S. at 396 (explaining that proper application of the reasonableness test requires careful attention to the facts and circumstances of each case, including the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight).  The court recognizes that the reasonableness test "is not capable of precise definition or mechanical application."  <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979).  Plaintiff's inability to adduce evidence sufficient to countervail the aforementioned undisputed facts, however, fails to influence the "calculus of reasonableness" in her favor.  Thus, Officer Gribble's use of force was objectively reasonable under the circumstances.

Based upon these undisputed facts, Officer Gribble did not use excessive force. Even viewing the record in the light most favorable to plaintiff, no sufficient evidentiary basis exists upon which a reasonable jury could find in her favor. Therefore, the court will grant the city defendants' motion for summary judgment on plaintiff's section 1983 excessive force claim against Officer Gribble.

**II. Qualified Immunity**

In the alternative, the city defendants argue that the doctrine of qualified immunity shields Officer Gribble from liability under section 1983. "Qualified immunity shields government actors from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Zaloga v. Borough of Moosic, 841 F.3d 170, 174 (3d Cir. 2016) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Thus, we ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the law was clearly established at the time of the violation." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

We have previously concluded that plaintiff has failed to adduce evidence sufficient to establish a violation of constitutional rights. Thus, the

court will grant the city defendants' motion for summary judgment with respect to qualified immunity.

### III. Count III, Fourteenth Amendment Claim Against the City of Wilkes-Barre

Next, the city defendants seek summary judgment on Count III, plaintiff's section 1983 municipal liability claim against the City of Wilkes-Barre. It is well-established that there can be no "award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm." City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2016) (citations omitted); Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (citations omitted). Having previously concluded that Officer Gribble inflicted no constitutional harm upon plaintiff, plaintiff's section 1983 municipal liability claim against the City of Wilkes-Barre fails as a matter of law. The city defendants' motion for summary judgment with respect to this claim will thus be granted.

**Conclusion**

For the foregoing reasons, the court will grant the city defendants'

motion for summary judgment. An appropriate order follows.

Date: **April 18, 2017**    **s/ James M. Munley**
                            **JUDGE JAMES M. MUNLEY**
                            **United States District Court**